895 P.2d 49 (1995)
STATE of Wyoming, ex rel., SWEETWATER COUNTY SCHOOL DISTRICT NUMBER ONE, State of Wyoming; and Sweetwater County School District Number Two, State of Wyoming, Appellants (Relators),
v.
Diana J. OHMAN, State Superintendent of Public Instruction; Stan Smith, Wyoming State Treasurer; and David Ferrari, Wyoming State Auditor, Appellees (Defendants).
No. 93-70.
Supreme Court of Wyoming.
May 4, 1995.
Gary M. Greenhalgh and Ford T. Bussart of Greenhalgh, Bussart, West & Rossetti, Rock Springs, for appellants.
Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., and Rowena L. Heckert, Sr. Asst. Atty. Gen., for appellees.
Before GOLDEN, C.J., and THOMAS, CARDINE,[*] MACY and TAYLOR, JJ.
THOMAS, Justice.
The issue in this case is whether shortfall grants legislatively authorized for school districts *50 that experienced a substantial reduction in assessed valuation of property situated within the district were required to be included in the computation of local resources of the district under WYO.STAT. § 21-13-310 (1991) for the 1991-1992 school year. After initially not requiring the inclusion, the State Department of Education (Department) changed its position and required the inclusion of such grants in the computation of local resources. Sweetwater County School District Number One (District 1) and Sweetwater County School District Number Two (District 2) both received such grants. They contested the requirement that the amounts of these grants be included as local resources in the computation for state funding entitlement for the 1991-1992 school year. Both school districts submitted a verified petition for a peremptory writ of mandamus, seeking an order from the district court that the state officials, Diana J. Ohman, State Superintendent of Public Instruction, Stan Smith, Wyoming State Treasurer, and David Ferrari, Wyoming State Auditor, be mandated to not require the inclusion of the grants. The district court ruled in favor of the state officials, holding the shortfall grants had not been previously reported by District 1 and District 2, and the shortfall grants had to be included in the computations for the 1991-1992 school foundation payments. A collateral issue exists with respect to the propriety of mandamus as a remedy in this instance. We hold, adopting arguments of District 1 and District 2, that the shortfall grants represent amounts directly traceable to projected tax revenues previously reported. We reverse the judgment entered by the district court and remand the case for the entry of a declaratory judgment, recognizing the remedy of mandamus is not appropriate.
In the Brief of Appellants, the issues are stated in this way:
A. Whether Appellees (Defendants) Diana J. Ohman, Stan Smith and Dave Ferrari have unlawfully deprived Appellants (Relators) of school foundation funds for Fiscal Year 1992 (School Year 1991-1992) by erroneously including shortfall grants received in Fiscal Year 1991 (School Year 1990-1991) as local resources in calculating funding entitlement under the School Foundation Program Guarantee for Fiscal Year 1992 (FY92).
B. In the alternative, whether Appellees (Defendants) have unlawfully deprived Appellant (Relator) Sweetwater County School District Number One of school foundation funds for Fiscal Year 1992 by providing a form which did not permit the School District to report the shortfall grant as actual local revenue in the year of receipt (FY91), instead of estimated local revenue for FY92.
In the Brief of Appellees, the following counterstatements of the issues appear:
I. Should mandamus be granted when the agency interpretation of the controlling statute effectuates the intent of the legislature and appellant's interpretation does the opposite?
II. Should Appellant School Districts have their 1990-1991 uncollected tax revenue replaced twice by the State, contrary to law?
III. Should the 1991-1992 state foundation program entitlements for one appellant district be calculated contrary to law in order to increase their size?
The parties have no disagreement with respect to the facts. Their disagreement arises out of the application of the pertinent legislation to those facts. The historical background encompasses the fact that, in the 1980s, some Wyoming school districts experienced significant shortages in financing, primarily due to overestimates of tax revenues, described in the statutes as local resources. Those overestimates primarily were caused by unforeseen decreases in projected assessed valuation impacting the school districts' share of the countywide six mill levy and the local district twenty-five mill levy. Tax rebates, tax litigation, and a receipt of delinquent tax payments were other factors affecting the estimates. The overestimates relating to local resources, in some instances, caused school districts to receive less than their full share of state funding described as "entitlements."
In 1988, the legislature recognized the serious problem of underfunding of schools, and it began to provide supplemental state funding *51 described as "adjustments" in WYO.STAT. § 21-13-310(e) (1988) and as "tax shortfall grants" in WYO.STAT. § 21-13-310(f) (1989). In 1991, the legislature appropriated funds for tax shortfall grants for fiscal year 1991 (FY91) in the amount of $3,600,000. The statutory provision is found in 1991 WYO. SESS.LAWS, Ch. 229 § 11, and reads:
(a) Three million six hundred thousand dollars ($3,600,000.00) within the public school foundation program account within the earmarked revenue fund created under W.S. XX-XX-XXX(a) is available to the state superintendent of public instruction to make grants to school districts in this state:
(i) Based upon the short term cash flow needs of the district during the 1990-91 school year due to a substantial reduction in assessed valuation of property situated within the district;
(ii) To a district which is not subject to recapture under W.S. XX-XX-XXX(b) and (c).
(b) Any amount received by a district under this section which has not been previously reported to the state department as a local resource, shall be included in the computation of local resources of the district under W.S. XX-XX-XXX for the 1991-1992 school year.
District 1 identified a local resource shortfall in May of 1991. On June 6, 1991, District 1 revised its anticipated shortfall projection and submitted a request for, and received, $916,000 from the Department. Similarly, District 2 experienced a shortfall, submitted a claim for additional school foundation funds, and received $822,683. When the Districts completed the School Foundation Program Application for 1991-1992 (FY92), they reported zero on the line entitled "Subsequent Tax Shortfall Collections" which was included under the "Computation of Local District Resources." The Department then notified the Districts it had changed its interpretation of the statute, and they were told they must report on that line the shortfall tax grants received in FY91. The Districts objected to this interpretation, but they did submit revised applications as directed.
The Districts then sought advice through the Superintendent of Public Instruction from the Attorney General for the correct interpretation of the new statute. The Attorney General's letter of advice stated the Department's FY92 forms did correctly reflect the interpretation of the law, that is, the FY91 tax shortfall grants were to be included in the actual resources received figure. The effect was to increase the local resources anticipated for FY92 by those amounts, which would reduce the school foundation funding for that year. The Districts then filed claims with the State Auditor, pursuant to WYO.STAT. § 9-1-404 (1991), and the auditor denied the claims.
The Districts then filed a Petition for Writ of Mandamus in the First Judicial District. After receiving briefs and hearing argument, the district court adopted the Department's interpretation of the law, finding in its decision letter:
This court construes section 11(b) as saying to the districts, that even though the foundation grant was not a local resource for the year it was awarded, it nevertheless shall be treated as if it were a local resource for future grant applications namely fiscal year 1991-1992.
The Districts appealed the judgment of the district court which granted the defendants' motion for summary judgment based upon the conclusion reached in its decision letter.
With respect to the entitlement program, the school districts were to receive a guaranteed amount calculated in accordance with WYO.STAT. § 21-13-309 (1991). The guaranteed amount was based on student enrollment and other factors established by the legislature. Local resources then were estimated by multiplying the assessed valuation of the district by the required mill levy and adding other payments received pursuant to WYO.STAT. § 21-13-310 (1991). The local resources were subtracted from the guaranteed amount to arrive at the entitlement amount provided by WYO.STAT. § 21-13-311 (1987). The entitlement amount was paid to school districts by the State Auditor from the foundation funds in accordance with WYO.STAT. § 21-13-313 (1991).
*52 Problems developed in the method of awarding shortfall grants. A school district could receive a tax shortfall grant in one fiscal year and then recoup a portion or all of that amount as a windfall if delinquent taxes were paid in subsequent fiscal years.[1] In 1991, the legislature addressed the "double-dipping" concern. The solution adopted was that the district should reimburse the state for excess entitlements by adjusting the entitlement calculation for the following fiscal year. In effect, this shift was from a historical budgeting approach involving estimates to a historical cash approach. The legislation providing for the shift in methodology was found in 1991 WYO.SESS.LAWS, Ch. 229, § 11.
This dispute arose after the adoption of 1991 WYO.SESS.LAWS, Ch. 229, § 11 because of the shift in methodology. In prior years, the local resources had been estimated for the forthcoming year. For the FY92 application, the Department required the Districts to use either the amount of estimated local resources for the forthcoming year or the actual resources received in the prior fiscal year, whichever was smaller. For subsequent fiscal years, the formula was based only upon actual local resources received in the prior fiscal year, which would include delinquent tax payments from prior years. The nub of this problem is whether the actual local resources for the prior fiscal year had to include any tax shortfall grant received. If the grant amount were not included, the formula uniformly resulted in the use of actual local resource figures from the prior fiscal year because most districts filing for tax shortfall grants received a lower actual resource than what had been estimated for that fiscal year.
The Districts contend the requirement of including the FY91 tax shortfall grant figures as an actual local resource on the FY92 application caused the grants received in FY91 to be taken back because the FY92 entitlements were reduced by the amount of the FY91 shortfall grants. The argument of the Department is that these Districts were beneficiaries of "double-dipping" because, after they received the tax shortfall grants, they also received subsequent delinquent tax payments that the grants were intended to replace. The Department also argues that, if the Districts' interpretation of 1991 WYO. SESS.LAWS, Ch. 229 § 11(b) is adopted, the Districts would have their FY91 local resources shortfall made up a second time by excluding it from the FY92 entitlement calculation. The Department contends such a result is contrary to the intent of the legislature.
The controversy we must resolve with respect to the statute is the interpretation that must be attached to the phrase "any amount received by a district * * * which has not been previously reported to the state department as a local resource" as found in 1991 WYO.SESS.LAWS, Ch. 229 § 11(b). The Districts rely upon an initial memorandum sent on April 12, 1991 from the director of school finance of the Department which stated:
Note that any shortfall grant received by a district in FY91 must be counted as a local resource in FY92, unless that amount has been previously reported as a local resource. In most cases, these amounts have been previously reported, and need not be counted again in FY92.
The interpretation the Districts rely upon would result in the entry of zero on the appropriate line in the application for FY92 because the Districts contend they had "previously reported [the grant] as a local resource" for FY91. The argument of the Department is that its revised interpretation of the statute requires the inclusion of this amount on the application because the shortfall grant had not been previously reported. There is a superficial logical appeal in the position of the Department. Obviously, District 1 and District 2 could not have reported as local resources for FY91 shortfall grants *53 that had not been contemplated at the time the estimate was prepared.
The Districts address the argument in this way. In its application for FY91, District 1 estimated the revenues from the six mill levy and the twenty-five mill levy based on assessed valuation would be $18,168,653. In the attachment to its June 6, 1991 letter to the Department, District 1 indicated it had received only $17,152,623 of the estimated amount and anticipated receiving an additional $100,030. Simply stated, the position of District 1 is that it had reported the $916,000 it received as a shortfall grant as estimated local resources for FY91.
Similarly, District 2 previously reported the amount of its shortfall because it had included that amount in its estimate of FY91 local resources. The formula provided in 1991 WYO.SESS.LAWS, Ch. 229, § 11(b) excludes from the computation of local resources for FY92 amounts previously reported. We are satisfied the conclusion of the Department to require the Districts to include the FY91 tax shortfall grants in their estimates of FY92 is contrary to the intent of the legislature.
There can be little question that 1991 WYO. SESS.LAWS, Ch. 229, § 11(b) is susceptible to different interpretations. As we look at the language of this subsection, however, we note the State Superintendent of Public Instruction is authorized to make grants to school districts in subsection (a). In subsection (b), the legislature refers to "any amount received." Had the legislature intended the word "amount" to be limited to a "grant," as the Department suggests, that would have been easy enough to say. Had the legislature used the word "grant" instead of "amount," subsection (b) would have been superfluous, however. It clearly is impossible for any district in its estimate for FY91 to have reported a grant it did not know it would receive. In our perception, it is far more rational to conclude the phrase "any amount received by a district under this section which has not been previously reported to the state department as a local resource * * *" must allude to some estimate which could have been previously reported. We hold this phrase would include the estimated taxes reported as local resources. This interpretation fits with a legislative purpose to replace the shortfalls in the collection of taxes.
The position of the Department assumes there will be recoupment of the lost tax revenues. That possibility is present, but there is no evidence this occurred. Furthermore, since this is a transition provision, in the years following FY92, any such recoupment of lost tax revenues will be included as local resources.
In this difficult task of statutory construction, we look to the subsequent actions of the legislature. The version of WYO.STAT. § 21-13-310 (1992), which was adopted after occurrence of the events leading to this case, does not control, but it demonstrates the goal the legislature was endeavoring to achieve with prior legislation. In subsections (a)(i), (a)(ii)(A), and (a)(ii)(B), WYO.STAT. § 21-13-310, there is provision for the inclusion of collections from the six mill and twenty-five mill tax levies in the computation of actual local district resources "regardless of the assessment year." Furthermore, subsection (g) provides:
Notwithstanding paragraphs (a)(i) and (ii) of this section, any revenue actually received by a district from mills levied and assessed prior to calendar year 1990 under W.S. XX-XX-XXX(a)(i)(A) or (ii)(A) and (C) and XX-XX-XXX(a), and for which a tax shortfall grant was not received by the district under law or otherwise previously excluded by the district from local resource computations in accordance with law, shall not be considered or reported as a local resource under subsection (a) of this section. A district shall verify eligibility under this subsection by submitting a written statement to the state department, certified by the county treasurer, that the revenues actually received were generated by levies assessed prior to calendar year 1990, that tax shortfall grants were not previously received by the district for those revenues and that the revenues were not previously excluded by the district *54 from local resource computations under this section.
WYO.STAT. § 21-13-310(g) (1992).
It thus appears the legislature clearly contemplated the tax shortfall grants would be substituted for revenues from the tax levies.
In summary, our analysis of this statutory scheme results in the conclusion that the legislature recognized a need to substitute grants for tax revenue shortfalls. It did that for FY91 and, beginning with the years following FY92, it required delinquent tax collections be included in the calculation. We construe the language of 1991 WYO.SESS. LAWS, Ch. 229 § 11 in a manner different from that of the district court and conclude, if the amounts represented by the tax shortfall grants were previously reported as local resources in the form of estimated tax revenues, the requirements of the statute were satisfied. District 1 and District 2 were not required to include the amount of the tax shortfall grants as local resources in their estimates for FY92.
With respect to the availability of mandamus as a remedy, we hold it is not the proper remedy. Mandamus is defined in WYO.STAT. § 1-30-101 (1988) as "a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." "The writ must not be issued when there is an adequate remedy at law." WYO.STAT. § 1-30-104 (1988). We have said:
[T]he writ of mandamus will issue only where the duty to be performed is ministerial and the obligation is peremptory and plainly defined. The law must not only authorize the demanded action but require it; and the duty must be clear and undisputable.
* * * * * *
[I]n order to warrant the issuance of mandamus, not only must there be a legal right in the relator, but owing to the extraordinary and drastic character of mandamus and the caution exercised by courts in awarding it, it is also important that the right sought to be enforced be clear and certain, so as not to admit of any reasonable controversy. The writ does not issue in cases where the right in question is doubtful.
LeBeau v. State ex rel. White, 377 P.2d 302, 303 (Wyo.1963).
It is clear mandamus cannot serve the purpose of an ordinary action, nor is it available as a substitute for an appeal. Ordinarily, the right of appeal is a plain, speedy, and adequate remedy at law. We agree with the state authorities that mandamus was not the proper remedy for determining whether tax shortfall grants authorized for the Districts were required by statute to be included as local resources in the year in which they were paid. The Districts are not entitled to the writ without a showing they have no plain and adequate remedy at law, and there has been no such showing.
While we conclude mandamus is not the proper remedy to be invoked by the Districts, we perceive this case as one in which the parties, in effect, sought a declaratory judgment. Certainly, that was the approach taken by the district court, and the arguments in this appeal manifest the need for a construction of the statute as it applied to the Districts. We hold, following the Districts' arguments, the tax shortfall grants are directly traceable to estimated tax revenues reported for the prior year. The grants were intended by law to replace that shortfall and were not required to be reported as local resources for the fiscal year following that in which they were paid.
We reverse the judgment entered by the district court, and we remand this case for the entry of an order declaring the statutory purpose in accordance with this opinion. That result should accomplish an adjustment in the foundation grants for FY92 in favor of District 1 and District 2.
NOTES
[*] Retired July 6, 1994.
[1] While the Department states that the Districts received subsequent delinquent taxes and kept them as windfalls, no evidence was presented in the record to show it actually occurred or, if it occurred, to what extent. In his decision letter, the district judge stated, "[i]t [this court] cannot with confidence declare that there is no double-dipping. Nor with confidence can it declare that there is double-dipping. Neither can it determine that the districts are indeed gaining from a windfall."